TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0227-KB

IN RE: JAMES EDWARD DAVIS

## IN SUPREME COURT

## OPINION AND ORDER

Pursuant to Kentucky Supreme Court Rule (SCR) 3.480(2), James Edward Davis[1] moves this Court to enter a negotiated sanction to resolve a pending disciplinary proceeding against him. Davis proposes a public reprimand, and the Kentucky Bar Association (KBA) has no objection. After review, we conclude that the proposed sanction is adequate, however we dismiss Count III.

## BACKGROUND

This disciplinary matter arises from information revealed during a September 9, 2022 hearing held by a Special Commissioner of the Kentucky Bar Association (KBA) to review accusations and possible suspension of Ronnie Goldy, the Commonwealth's Attorney for the 21st Judicial Circuit. Goldy was accused of engaging in improper communications with Misty Helton in exchange for prosecutorial assistance. During the hearing, in addition to other witnesses, the Special Commissioner heard testimony from Goldy and Helton. As a result of the hearing, Goldy was temporarily suspended from the practice

---

[1] Davis, KBA Member Number 90487, was admitted to the practice of law in the Commonwealth on October 15, 2004. His bar roster address is 9 North Maysville Street, P.O. Box 390, Mount Sterling, Kentucky 40353.

of law. He was also recently convicted in a federal jury trial for crimes related to his improper actions involving Helton.

The hearing revealed that Helton has had an involved criminal history which led to multiple incarcerations. Most recently, Helton was arrested in 2022 and faced an array of new misdemeanor and felony charges in Bath County. She was appointed a public defender.

At Goldy's temporary suspension hearing, Helton testified that while she was in custody at the Rowan County Detention Center, Davis visited her on July 16, 2022 on behalf of his client, Goldy. Helton testified that Davis brought an affidavit for her to sign containing numerous statements purporting to come from Helton. Though Davis asked her to sign the affidavit, and gave reasons why she should be willing to do so, Helton did not sign the affidavit.

Davis also testified at the temporary suspension hearing. He stated that he represented Goldy when, at Goldy's request and direction, he prepared an affidavit for Helton to review and sign. Davis did not speak with Helton prior to preparing the affidavit but the affidavit contained admissions and statements purported to be from Helton that would benefit Goldy's position. According to Davis, Goldy informed him that the statements in the affidavit were true and that Helton would confirm the statements. Some of Davis' statements to Helton referenced potential liability of her signing the affidavit. Helton expressed that she felt she needed legal counsel before signing anything.

Additionally, while Davis was discussing these matters with Helton, Davis recorded the conversation without her express knowledge or consent.

2

While Davis notes that Helton did not reveal any incriminating information about her pending charges during their discussion of the affidavit, he acknowledges that if she had responded to him with admissions or incriminating statements about the criminal allegations, the recording of such statements without her consent could have violated Helton's rights. The audio recording was played into the record at the September 9 hearing before the Special Commissioner.

On June 2, 2023, the Inquiry Commission filed a three-count Charge against Davis. Count I alleges violation of SCR 3.130(4.3), which provides

> [i]n dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person. The lawyer may suggest that the unrepresented person secure counsel.

Davis acknowledges that he violated this rule by having discussions with Helton at the detention center, and that Helton may have viewed him as providing her legal advice, during a time in which she was unrepresented and vulnerable.

Count II alleges violation of SCR 3.130(8.4)(c) which provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The Charge alleges that Davis violated this rule when he secretly recorded his conversation with Helton while he attempted to get Helton to sign the affidavit. Davis denies the allegations in

3

Count II and requests that this Count be dismissed. The KBA has no objection and we therefore agree to dismiss Count II.

Count III alleges violation of SCR 3.130(4.4)(a), which provides that a lawyer shall not use methods of obtaining evidence that violate the legal rights of a person. Davis admits that he violated this rule by recording his conversation with Helton without her knowledge or consent. Helton did not have counsel present and Davis questioned her about a variety of topics, including her pending criminal charges. Davis now moves this Court to impose a public reprimand to resolve this disciplinary matter.

**ANALYSIS**

The negotiated sanction rule provides that "[t]he Court may consider negotiated sanctions of disciplinary investigations, complaints or charges" if the parties agree. SCR 3.480(2). Upon receiving a motion under this Rule, "[t]he Court may approve the sanction agreed to by the parties, or may remand the case for hearing or other proceedings specified in the order of remand." *Id.* Thus, acceptance of the proposed negotiated sanction falls within the discretion of this Court.

Case law supports the imposition of the sanction Davis proposes. The only Kentucky case involving violation of SCR 3.130(4.3) is *Martin v. Kentucky Bar Association,* 775 S.W.2d 519 (Ky. 1989). In that case, attorney Martin resigned from the KBA after the Court found that Martin (1) neglected a legal matter entrusted to him in the handling of an estate; (2) wrote checks payable to cash from the estate and made unsecured cash loans to another client; (3)

4

accepted a fee to appeal a decision and misrepresented the status of an appeal after the action had been dismissed; (4) communicated directly with an adverse party on the subject of representation, knowing that he was represented by counsel and without consent of that counsel; (5) neglected a legal matter in the representation of a client in a dissolution proceeding; and (6) engaged in the representation of a criminal defendant while under temporary suspension from the practice of law. *Id.* Clearly, Martin's violations were much more numerous and more egregious than Davis' and indeed led to an agreed sanction of resignation under terms of disbarment. Further, *Martin* involved discussing ongoing litigation with an opposing party represented by counsel, while Davis' violation involves giving legal advice to an unrepresented person. Thus, while *Martin* is the only Kentucky case involving SCR 3.130(4.3), it involves far more significant misconduct rendering it of little precedential value in considering the circumstances presently before us.

Given the lack of Kentucky caselaw involving SCR 3.130(4.3), a case from Ohio offers guidance. In *Disciplinary Counsel v. Rich,* 633 N.E.2d 1114 (Ohio 1994), an attorney was deemed to have violated multiple rules of professional conduct, including the Ohio version of SCR 3.130(4.3), which prohibits an attorney from giving advice to a person who is not represented by a lawyer and whose interest may conflict with those of the attorney's client. Rich represented the alleged father of a child in a pending paternity action and when the child's mother came to Rich's office, he gave her advice on the matter and walked her through signing several documents, including a consent judgment

entry dismissing the parentage action against Rich's actual client. *Id.* at 472.

The Court determined a public reprimand was warranted for Rich's violation of the rule. *Id.* at 474. The *Rich* case is like Davis' in that both attorneys provided advice to a person who was not represented by a lawyer and whose interests may have conflicted with those of their clients.

Regarding the SCR 3.130(4.4) violation, the Office of Bar Counsel cites *Chewning v. Kentucky Bar Association*, 605 S.W.3d 332 (Ky. 2020), as a case to support the allegation and Davis' admission that he violated the rule. However, that case is inapposite to Davis' case. Here, Davis did not violate a law and did not engage in unethical conduct to represent his client.

In *Chewning*, Chewning advised his client to use a voice-activated recording device, which was sewn into a child's clothing, and Chewning then used the information from conversations secretly recorded by the device in a child custody proceeding. Chewning later entered a negotiated guilty plea to the misdemeanor crime of criminal attempt to commit eavesdropping. *Id.* at 333. In the disciplinary case, Chewning was suspended from the practice of law for thirty days, probated for two years, for his misconduct. *Id.* at 334. The Court determined that Chewning's conduct violated SCR 3.130(4.4)(a) and SCR 3.130(8.4)(b), which provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer. *Id.* Here, in relation to Chewning's violation of SCR 3.130(4.4)(a), Davis was not eavesdropping. The recording of

the conversation between Davis and Helton was not one lacking consent of at least one party and did not violate KRS 526.010 or any other statute.

In 1984, the KBA Ethics Committee issued an opinion, KBA E-279,[2] relevant to the circumstances in this case. KBA E-279 states that "when the attorney is representing a person accused in a criminal case it may be proper for him to secretly record conversations with witnesses in that proceeding." *Id.* The KBA reached that conclusion in light of an oversight within American Bar Association (ABA) Formal Opinion 337.[3] *Id.* ABA Formal Opinion 337 concluded that a prosecutor may ethically make and use secret recordings if acting within constitutional and statutory limitations. *Id.*

The KBA Ethics Committee considered valid reasons for permitting defense counsel to secretly record conversations with witnesses in the proceeding. *Id.* In addition to defense counsel being treated equally to the prosecutor and potential violations of a defendant's Sixth and Fourteenth Amendment rights, the Committee noted that if defense counsel secretly records the conversations of witnesses, that "does not so plainly diverge from accepted standards of candor and fairness that it is inconsistent with ethical

---

[2] Kentucky Bar Association Ethics Opinion KBA E-279 (Jan. 1984). The KBA Board of Governors has formally adopted this opinion. *Id.* at [2] (note).

[3] ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 337 (1974) (concluding that except for certain exceptions addressed in the opinion, no lawyer should record any conversation whether by tapes or other electronic device, without the consent or prior knowledge of all parties to the conversation).

Canon 9 of the Code of Professional Responsibility was the basis of the opinion. Canon 9 stated that a lawyer should avoid even the appearance of professional impropriety. KBA E-279 at [1]. As discussed below, with Canon 9 no longer being a part of the later adopted Model Rules, the ABA's broad prohibition has changed.

behavior." *Id.*[4]  The Committee further considered the Code of Professional Responsibility Canons 6 and 7, requiring a lawyer to exercise competence in the zealous representation of his client, which apply in the context of criminal cases and support the lawyer secretly recording conversations of witnesses in the representation of his client. *Id.*

Notably, with adoption of the Model Rules of Professional Conduct, which omitted the principle within Canon 9 of the Code of Professional Responsibility upon which ABA Formal Opinion 337 was based, the ABA has since rejected its broad statement that, with a possible exception for law enforcement officials, a lawyer should not record any conversation without the consent or prior knowledge of all parties to the conversation. ABA Formal Op. 01-422 at 1-2.[5] With regard to Model Rule 4.4, codified in SCR 3.130(4.4)(a), ABA Formal Opinion 01-422 states:

> [T]here seems no reason to treat recording of conversations any differently in this respect from other methods of gathering evidence. The Committee believes that to forbid obtaining of evidence by nonconsensual recordings that are lawful and consequently do *not* violate the legal rights of the person whose words are unknowingly recorded, would be unfaithful to the Model Rules as adopted.

---

[4] Quoting the Committee on Professional and Judicial Ethics of the Bar Association of the City of New York in Opinion No. 80-95.

[5] ABA Standing Comm. on Ethics and Prof'l Responsibility, Formal Op. 01-422 (2001) (concluding that a lawyer who electronically records a conversation without the knowledge of the other party or parties to the conversation does not necessarily violate the Model Rules when the conversation is not recorded in violation of the law of that jurisdiction).

*Id.* at 5 (internal footnote omitted). Consistent with KBA E-279, ABA Formal Opinion 01-422 concludes: "Where nonconsensual recording of conversations is permitted by the law of the jurisdiction where the recording occurs, a lawyer does not violate the Model Rules merely by recording a conversation without the consent of the other parties to the conversation." *Id.* at 7. We adopt that view here.

Davis' recording of Helton was permitted by KRS Chapter 526. That being so, SCR 3.130(4.4)(a) was not violated. Consequently, despite Davis admitting a violation of SCR 3.130(4.4)(a), we do not consider SCR 3.130(4.4)(a) as a basis for discipline in this proceeding.

Additionally, the *ABA Standards of Imposing Lawyer Sanctions* provide aggravating and mitigating factors to consider when imposing lawyer discipline. Aggravating factors in Davis' case are the vulnerability of the victim and Davis' substantial experience in the practice of law. Mitigating factors include an absence of a prior disciplinary record, absence of a dishonest or selfish motive, and remorse. There is no substantial difference in the weight of these aggravating and mitigating factors.

## CONCLUSION

After consideration of the disciplinary record, we find that the proposed public reprimand is appropriate.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. James Edward Davis, KBA Member Number 90487, is hereby publicly reprimanded for the above-described and admitted violation of SCR

9

3.130(4.3). Count II, alleging violation of SCR 3.130(8.4)(c), is dismissed. Count III, alleging violation of SCR 3.130(4.4)(a), is also dismissed.

2. Davis shall attend, at his expense, and successfully complete the next - available Ethics and Professionalism Enhancement Program offered by the Office of Bar Counsel, separate and apart from his fulfillment of any other continuing legal education requirement.

3. In accordance with SCR 3.450, Davis is directed to pay all costs associated with these disciplinary proceedings against him, said sum being $161.25, for which execution may issue from this Court upon finality of this Opinion and Order.

All sitting. Conley, Keller, Lambert, Nickell, and Thompson, JJ., concur. VanMeter, C.J., concurs in part and dissents in part by separate opinion, in which Bisig, J., joins.

VANMETER, C.J., CONCURRING IN PART AND DISSENTING IN PART: I must respectfully dissent from so much of the majority as holds that there is no ethical violation caused by an attorney surreptitiously recording his conversations with another individual. In my view, such conduct is violative of SCR 3.130(8.4)(c) which provides, "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" The act of recording another without her knowledge is precisely the kind of "dishonesty, fraud, [or] deceit" that attorneys have a higher obligation to avoid.

10

I believe that the position set forth in KBA E-279 to be the more ethically tenable one. An attorney representing a client in a criminal matter may have legitimate reasons for secretly recording conversations with witnesses, so long as the witness's constitutional rights are respected. However, those reasons dissipate with regard to conversations between attorney and client or between attorney and third-party. In that instance, the attorney is obligated to disclose that a recording is being made so the other participants in the conversation can respond appropriately. To find otherwise would invite the use of secret recordings as an unsavory litigation tactic. As the ABA once recognized, the mere fact that making a secret recording might be legal does not make it ethical.

Nevertheless, I acknowledge that the law of the Commonwealth allows for the recording of conversations so long as at least one party thereto consents. KRS 526.010. However, our rules of professional conduct are replete with examples where attorneys are held to a higher standard than the bare legal minimum. Lawyers are bound by a duty of candor to clients and to potential clients despite the lack of any statutory mechanism protecting client information. SCR 3.130(1.6); SCR 3.130(1.18). Our rules compel attorneys to disclose to the court controlling adverse legal authority, even though a *pro se* litigant would not be so required. SCR 3.130(3.3)(a)(2). We impose a duty upon attorneys to take remedial measures against clients planning to engage in fraudulent or criminal conduct, although the public at large is not under such a general legal obligation. SCR 3.130(3.3)(b). Attorneys may not lie to clients

11

or to third parties in spite of the First Amendment's protection of such speech. SCR 3.130(4.1); SCR 3.130(8.4)(c). We restrain attorneys from engaging in the otherwise lawful act of viewing inadvertently sent emails if that email relates to a client's representation. SCR 3.130(4.4)(b). Lawyers are limited in their ability to comment on litigation if that comment might prejudice the proceeding, a clear restriction on an attorney's right to free speech. SCR 3.130(3.6).

In short, what constitutes acceptable behavior for a member of the Bar is not limited to what the general public is allowed to do by law. Our ethics rules represent a higher standard appropriate for those operating in a profession fundamentally based upon upholding the public trust and engaging fairly with our fellow attorneys, those we represent, and the myriad others that fall into the orbit of the legal system. I would hold that the making of secret recordings by attorneys undermines that trust and violates our ethical canons.

Bisig, J., joins.

ENTERED: September 26, 2024

_____
CHIEF JUSTICE